**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 25-cv-01409-RMR-SBP

HAEMONETICS CORPORATION,

Plaintiff,

v.

TERUMO BCT, INC.,

Defendant.

---

**ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Susan Prose entered on August 7, 2026, ECF No. 94, addressing Defendant Terumo BCT, Inc.'s ("Defendant" or "Terumo") Partial Motion to Dismiss, ECF No. 63. Magistrate Judge Prose recommends the Court deny Terumo's Motion. Plaintiff timely filed an objection to the Recommendation, ECF No. 95, and Defendants filed a response, ECF No. 102. The Court has received and considered the Recommendation, the briefing, the record, and the pleadings. For the reasons stated below, the Court overrules Plaintiff's objection and adopts the Recommendation.

## I. BACKGROUND[1]

Plaintiff Haemonetics Corporation ("Plaintiff" or "Haemonetics") is a global corporation that develops and manufactures medical equipment. As part of its business, Haemonetics holds patents for technology related to end-to-end plasma collection. The Asserted Patents in this case relate to Haemonetics' "innovative approaches to plasma collection systems" that "yield[] an increased amount of plasma collected during one donation, on average, while still ensuring the safety and comfort of the individual donor." ECF No. 48 ¶ 21.

Terumo also manufactures and distributes plasma collection systems. Haemonetics initiated this lawsuit claiming Terumo's Accused Products infringe Haemonetics's patents. Terumo moved to dismiss Haemonetics's Counts III, IV, VI-IX of the Second Amended Complaint on the basis of patent-eligibility under 35 U.S.C. § 101. Magistrate Judge Prose recommends the Court deny the Motion, after finding that Haemonetics has plausibly alleged patent eligible subject matter. In her analysis, Magistrate Judge Prose concludes that, although Haemonetics' patent claims are directed to an abstract idea, they include an innovative concept to be patent-eligible under 35 U.S.C. § 101.

Neither party objected to the Recommendation's ultimate conclusion. However, Haemonetics objects to two of the Recommendation's intermediate findings: (1) that the challenged claims are directed to an abstract idea; and (2) that Claim 8 of the '926 Patent

[1] The Court incorporates the "Background" section from the Recommendation, ECF No. 94 at 2-5, and the Motion, ECF No. 58 at 8-14.

and Claim 20 of the ’873 Patent are representative of all the challenged claims for patent eligibility purposes. ECF No. 95 at 2. Terumo filed a response, asking the Court to accept and adopt the Recommendation’s findings in full. ECF No. 102.

## II. LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge’s recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge’s findings or recommendations. 28 U.S.C. § 636(b)(1) (“A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.”); Fed. R. Civ. P. 72(b)(3) (“The district judge must determine de novo any part of the magistrate judge’s disposition that has been properly objected to.”). “[A] party’s objections to the magistrate judge’s report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.” *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

## III. ANALYSIS

“Section 101 of the Patent Act defines the subject matter eligible for patent prosecution.” *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The Supreme Court has long held that “[l]aws of nature, natural phenomena, and abstract ideas are not patentable.” *Id.* (citing *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 590 (2013)). In *Alice*, the Supreme Court also “set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas

from those that claim patent-eligible applications of those concepts." *Id.* at 217. The framework consists of two consecutive steps. First, courts must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If the answer is "yes," the courts must "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (citation omitted).

### A. *Alice* Step One

Magistrate Judge Prose thoroughly analyzes the distinction between patent-eligible and patent-ineligible ideas under the first step of *Alice*. For example, "claims that simply demand the production of a desired result without any limitation on how to produce that result are directed to an abstract idea" and, thus, patent ineligible. ECF No. 94 at 18 (citing *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022) (cleaned up)). *Alice* explains that patent ineligible claims include "an algorithm for converting binary-coded decimal numbers into pure binary form" and a "mathematical formula for computing 'alarm limits' in a catalytic conversion process." 573 U.S. at 218. On the other hand, claims that focus "on the specific asserted improvement" of an otherwise abstract idea may be patent eligible. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016) (stating "the first step in the *Alice* inquiry in this case asks whether the focus of the claims is on the specific asserted improvement in computer capabilities (i.e., the self-referential table for a computer database) or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.).

Magistrate Judge Prose describes Claim 8 of the ’926 Patent as “an assemblage of conventional apheresis components—a ‘venous access device,’ tubing, a pump, a blood separator, and a collection container—coupled with a ‘controller,’ to complete the apheresis process.” ECF No. 94 at 20 (citing ECF No. 48-3 at 11:20-49). Indeed, a close review of the claim shows that none of the elements include a “specific asserted improvement” that goes beyond conventional operation. However, Haemonetics argues that the “controller” of Claim 8 assigns an operational role to the physical component and, thus, describes a “technological improvement” beyond an abstract idea. ECF No. 95 at 4. Haemonetics contends that the controller described in Claim 8 goes beyond the prior systems and that the “Federal Circuit has repeatedly cautioned against “describing the claims at such a high level of abstraction and untethered from the language of the claims” that the judicial exceptions swallow § 101.” *Id.* at 4-5 (citing *Enfish*, 822 F.3d at 1337).

In its analysis of *Enfish*, Haemonetics oversimplifies the Federal Circuit’s guidance on abstract ideas. In *Enfish*, the Federal Circuit explained that the claims at issue were “not simply directed to *any* form of storing tabular data, but instead are specifically directed to a *self-referential* table for a computer database.” 822 F.3d at 1337 (emphasis original). The *Enfish* patent’s “specification also teaches that the self-referential table functions differently than conventional database structures.” *Id.* Therefore, the Federal Circuit disagreed with the defendant’s view of the claims “as being directed to the concepts of organizing data into a logical table with identified columns and rows where one or more rows are used to store an index or information defining columns.” *Id.* The

Circuit Court characterized the defendant's perspective as "describing the claims at such a high level of abstraction and untethered from the language of the claims." *Id.*

Here, as the Recommendation clearly outlines, the "controller" described in Claim 8 does not include the same type of "technological improvement" as a "self-referential table for a computer database." Instead, the "controller" calculates "volume of anticoagulant," "target volume of pure plasma to collect," and "a target collection volume based, at least in part, on the calculated volume of anticoagulant and the calculated volume of pure plasma." ECF No. 48-3 at 11:36-49. The claim language itself describes mathematical calculations based on volume, which is precisely the type of abstract idea identified in *Alice*. 573 U.S. at 218 ("a mathematical formula for computing 'alarm limits' in a catalytic conversion process was also a patent-ineligible abstract idea").

Haemonetics attempts to overcome this obstacle by arguing that *CardioNet* and *EcoServices* confirm Claim 8's technological focus. However, both cases involve claims that are distinguishable from Claim 8. First, the pertinent claim in *CardioNet* is "directed to an improved cardiac monitoring device and not to an abstract idea." *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1368 (Fed. Cir. 2020). A review of that independent claim reveals that the claimed device comprises "a beat detector," "a ventricular beat detector," "variability determination logic to determine a variability in the beat-to-beat timing," "relevance determination logic to identify a relevance of the variability in the beat-to-beat timing to at least one of atrial fibrillation and atrial flutter," and "an event generator to generate an event when the variability in the beat-to-beat timing is identified as relevant to the at least one of atrial fibrillation and atrial flutter." *Id.* at 1365. From the language of

the claim itself, it is apparent that a "relevance determination logic" and an "event generator" are far more technical than basic mathematical formulas. Thus, it comes as no surprise that the Federal Circuit was quick to conclude that the "claims focus on a specific means or method that improves cardiac monitoring technology" and "are not directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at 1368. The Federal Circuit turned to the written description of the patent to confirm their conclusion. *Id.*

*EcoServices* similarly evaluated a claim "directed to a specific combination" of components "configured in a certain way to create technical improvements." *EcoServices, LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634, 643 (Fed. Cir. 2020). In *EcoServices*, the Federal Circuit also "consider[ed] the patent's written description, as it is helpful in illuminating what a claim is directed to." *Id.* at 642. The patent claims at issue in *EcoServices* involved automation of jet engine washing. *Id.* The Circuit Court concluded that the "systems of the claims at issue achieve a level of automation that provides an improvement over the prior art human-operated washing systems." *Id.* Reviewing the claim language itself, the *EcoServices* independent claim recites "a control unit configured to accept the information related to engine type from the information detector and to determine a washing program to be used as a function of the information relating to engine type from a set of preprogrammed washing programs, and further configured to regulate the washing unit according to washing parameters associated with the washing program used." *Id.* at 636. Unlike the calculations in Claim 8, the *EcoServices* claim includes components that created technical improvements, such as a control unit

configured to accept and program information, beyond mathematical calculations. Thus, *EcoServices* and *CardioNet* fail to support Haemonetics' assertion that Claim 8 describes patent eligible content at *Alice* step one.

As a final argument, Haemonetics contends that, because the Recommendation correctly concludes that the Second Amended Complaint "plausibly alleges an unconventional combination," that conclusion alone "independently resolves the Motion." ECF No. 95 at 10. The Court is unpersuaded by this argument. In *CardioNet*, the Federal Circuit reviewed the district court's decision regarding the defendant's motion to dismiss and conducted a complete *Alice* analysis. *See* 955 F.3d at 1366-75. Thus, the Recommendation appropriately and properly applied *Alice*, and Haemonetics' first objection is OVERRULED.

**B. The Recommendation's Representative Claim Findings**

Haemonetics also objects to the Recommendation's approach in reviewing the claims at issue. Haemonetics alleges the "[d]ifferent claims recite materially different controller functions, donor inputs, physical components, and methods of determining the relevant plasma or anticoagulant volumes" and accuses the Recommendation of "overgeneralizing the calculations and hardware." ECF No. 95 at 9. Haemonetics additionally takes issue with the Recommendation's treatment of Claim 8 as representative of Claim 17 of the '873 Patent and Claim 29 of the '204 Patent. *Id.* at 10. Without analysis, Haemonetics concludes that Terumo failed to meet its burden of "making a prima facie showing that grouped claims are substantially similar and linked to the same allegedly ineligible concept." *Id.*

The Court disagrees with each of Haemonetics arguments. The Recommendation clearly and thoroughly outlines its reasoning in selecting Claim 8 as representative of the independent claims and two dependent claims, Claim 17 of the ’873 Patent and Claim 28 of the ’204 Patent. ECF No. 94 at 7-15. The Recommendation explains that each claim “recites standard mechanical equipment used in automated plasma collection procedures to gather/supply information used in the routine collection volume calculations” and that the dependent claims “by adding only generic components, do not affect the patent eligibility analysis.” *Id.* at 14. Magistrate Judge Prose also analyzes Terumo’s burden of making a prima facie showing that the group of claims are substantially similar and linked to the same ineligible concept. *Id.* at 8-13. Given Haemonetics failure to point to specific flaws in the Recommendation and the Recommendation’s meticulous analysis, Haemonetics’ objection is OVERRULED.

## IV. CONCLUSION

For the reasons set forth, the Court ORDERS:

1. Haemonetics’ Objection to the Recommendation, ECF No. 95, is OVERRULED;
2. The Recommendation, ECF No.94, is ACCEPTED AND ADOPTED;
3. Temuro’s Partial Motion to Dismiss, ECF No. 58, is DENIED; and
4. The Joint Motion for Determination of Claim Construction, ECF No. 88, is GRANTED. A Markman Hearing is set for January 28, 2027, at 10:00 a.m. in Courtroom A 901 before Judge Regina M. Rodriguez.

DATED: September 30, 2026

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge